UNITED STATES DISTRICT COURT FOR
THE WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| LYNDA JO CASEY, | ) |
| Plaintiff, | ) ) ) |
| v. | ) ) Case No. CIV-18-166-STE ) |
| NANCY A. BERRYHILL,<br>Acting Commissioner of the<br>Social Security Administration, | ) ) ) ) ) |
| Defendant. | ) |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issues presented, the Court **AFFIRMS** the Commissioner's decision.

### I.     PROCEDURAL BACKGROUND

On November 24, 2009, Ms. Casey applied for disability insurance benefits. (TR. 143-159). Initially and on reconsideration, the Social Security Administration denied the application. Following an administrative hearing, an Administrative Law Judge (ALJ) issued an unfavorable decision. (TR. 46-55). The Appeals Council denied Plaintiff's

request for review. (TR. 1-3). On an Agreed Motion to Reverse and Remand the first decision, the Western District of Oklahoma reversed the ALJ's decision, and the Appeals Council remanded the case for further administrative proceedings. (TR. 621-626, 629-631). Following a review of the record, the same administrative law judge issued a second unfavorable decision. (TR. 700-710). On appeal, the Western District of Oklahoma reversed the ALJ's decision, and the Appeals Council remanded the case for further administrative proceedings with a different ALJ. (TR. 717-719, 734). Following a second administrative hearing, a second ALJ issued a third unfavorable decision. (TR. 645-660, 667-696). The Appeals Council denied Plaintiff's request for review, making the third decision the final decision of the Commissioner. (TR. 637-639).

## II.  THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity between her alleged onset date of March 1, 2009 and her date last insured of March 31, 2009. (TR. 648). At step two, the ALJ determined Ms. Casey had the following severe impairments: status post two back surgeries and depression. (TR. 648). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1 (TR. 649).

At step four, the ALJ concluded that Ms. Casey could not perform her past relevant work. (TR. 659). Even so, the ALJ found that through the date last insured, March 31, 2009, Plaintiff retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 C.F.R. 404.1567(b). That is, she could occasionally lift and/or carry twenty pounds, frequently ten pounds, stand and/or walk at least six hours in an eight-hour workday, and sit at least six hours, except that she was further limited to simple repetitive tasks with the ability to relate to supervisors and coworkers only superficially. "Superficially," means a job with not much requirement for direction or frequent supervision. "Superficially" further means that coworkers might be around, but the individual would not have to work together with them to accomplish task[s]or as a part of a team. She could not work with the general public.

(TR. 650). At the hearing, the ALJ presented the RFC limitations to a vocational expert (VE) to determine whether there were other jobs in the national economy that Plaintiff could perform. (TR. 692). Given the limitations, the VE identified two jobs from the Dictionary of Occupational Titles. (TR. 693). The ALJ adopted the testimony of the VE and concluded at step five that Ms. Casey was not disabled based on her ability to perform the identified jobs. (TR. 660).

## III.  ISSUES PRESENTED

On appeal, Plaintiff alleges the ALJ erred in (1) determining that her sleep disorder was not a medically determinable impairment; (2) improperly evaluating Plaintiff's subjective claims of disabling symptoms; and (3) failing to recontact Plaintiff's treating physicians. (ECF No. 15:7-21).

## IV.  STANDARD OF REVIEW

This Court reviews the Commissioner's final "decision to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the

correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. ANALYSIS

### A. *Sleep disorder*

Plaintiff first claims that the ALJ erred in finding that her sleep disorder was not medically determinable. (ECF No. 15: 7-9). The Social Security Act defines disability as the inability to do any substantial gainful activity by reason of any medically determinable physical or mental impairment that can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months. 42 U.S.C.A. § 416(i)(1). An impairment must be medically determinable; in other words, it must result from anatomical, physiological, or psychological abnormalities that can be shown by medically acceptable clinical and laboratory diagnostic techniques. *See* SSR 16-3p, 2017 WL 5180304, at * 3 (Oct. 25, 2017, to be applied to decisions made on or after Mar. 28, 2016); SSR 96-4p, 1996 WL 374187, at *1 (July 2, 1996) (rescinded on June 14, 2018, due to duplicity with SSR 16-3p. 83 Fed. Reg. 27816 (June 14, 2018)). The existence of a medically determinable impairment must be established by medical signs or laboratory findings, and under no circumstances may the existence of an impairment be established on the basis of symptoms alone. *See* SSR 16-3p, 2017 WL 5180304, at * 3; SSR 96-4p,

1996 WL 374187, at *1. "Thus, regardless of how many symptoms an individual alleges, or how genuine the individual's complaints may appear to be, the existence of a medically determinable cannot be established in the absence of objective medical abnormalities; i.e., medical signs and laboratory findings." SSR 96-4p, 1996 WL 374187, at *1

Here, the ALJ found that Plaintiff's "report of intermittent sleep disorder" was "medically non-determinable prior to her date last insured of March 31, 2009." (TR. 648). The ALJ noted the regulatory requirements set forth above, then discussed two progress notes from Plaintiff's physician documenting "sleep disturbances, malaise and fatigue." (TR. 648). Both of those progress notes were after Plaintiff's date last insured. *See id.* The ALJ then noted that the physician adjusted Plaintiff's medication and, three years later, a different physician documented that Plaintiff "reported sleeping more soundly and not waking up as sedated with her medication." (*Id.*). The ALJ further noted additional records indicating that Plaintiff's sleeping was caused by medication and specifically found that the sleeping issues "were more related to the side effects of her medication as opposed to a confirmed diagnoses of fatigue or a sleeping disorder." (TR. 648-49). The ALJ also found that assessments of sleep apnea in the record appeared to be based on Plaintiff's "subjective complaints" as "there is no documentation of sleep studies in the record confirming sleep apnea." (*Id.*).

Plaintiff points to one of the progress notes discussed by the ALJ in which Plaintiff's physician assessed a "sleep disturbance." (ECF No. 15:8 (citing TR. 267, Sept. 21, 2009, progress note)). Plaintiff argues that this is a "confirmed diagnoses" and that it does not "matter what is driving her sleep issues." ECF No. 15:8. Though Plaintiff is correct that

5

this is a diagnosis of a sleep disturbance, it does not establish a medically determinable impairment. The diagnosis code neither indicates that Plaintiff's symptoms result from anatomical, physiological, or psychological abnormalities[1] nor is substantiated by any medically acceptable clinical or laboratory diagnostic techniques. Plaintiff has not shown that the ALJ erred in determining that her sleep issues were not a medically determinable impairment.[2]

### B. *Credibility*

Much of the remainder of Plaintiff's brief argues that the ALJ erred in his credibility determination. When a claimant complains of severe symptoms, an ALJ is required to evaluate "the intensity, persistence, and functionally limiting effects of symptoms," such as pain and other subjective complaints, that are associated with the claimant's medically determinable impairments. *See* SSR 16-3p, 2017 WL 5180304, at *1; *Wilson*, 602 F.3d at 1144-45. "Credibility determinations are peculiarly the province of the finder of fact, and we will not upset such determinations when supported by substantial evidence." *Cowan v. Astrue*, 552 F.3d 1182, 1190 (10th Cir. 2008) (internal quotation marks omitted). An ALJ must consider such factors as a claimant's daily activities; attempts to find relief; the

---

[1] Indeed, the diagnosis code used by the physician, 780.5, indicates only a *general symptom* of sleep disturbances. *See* 2009-ICD-9-CM Diagnosis Codes—780 General symptoms at http://www.icd9data.com/2009/Volume1/780-799/780-789/780/default.htm (last visited Sept. 11, 2018).

[2] Though Plaintiff argues her RFC should have included sleep issues, *see* ECF No. 15:9, an ALJ is not required to consider non-medically determinable impairments in the RFC. *Ray v. Colvin*, 657 F. App'x 733, 734 (10th Cir. 2016) (citing *Wells v. Colvin*, 727 F.3d 1061, 1069 (10th Cir. 2013)). Here, however, the written decision reflects that the ALJ considered evidence and testimony regarding Plaintiff's sleep disorder in assessing her RFC. *See* TR. 648, 649, 651, 652, 653, 654, 656, 657, 658.

type, effectiveness and side effects of medication; and factors that precipitate and aggravate the symptoms. *Hamlin v. Barnhart*, 365 F.3d 1208, 1220 (10th Cir. 2004). "[F]indings as to credibility should be closely and affirmatively linked to substantial evidence." *Cowan*, 552 F.3d at 1190 (internal quotation marks omitted); *accord Romo v. Comm'r, Soc. Sec. Admin.*, No. 17-1354, 2018 WL 4212112, at *4 (10th Cir. Sept. 5, 2018).[3]

### a. Testimony

The second section of Plaintiff's brief, captioned "The ALJ's part B findings Are as Bad as His RFC," challenges the ALJ's determination to not fully accept claims by Plaintiff and her husband regarding the severity of Plaintiff's symptoms. *See* ECF No. 15:9-12. Plaintiff references the ALJ's discussion at step three of Plaintiff's testimony and the function report completed by Plaintiff's husband. ECF No. 15:10 (citing TR. 649). Plaintiff also references the ALJ's discussion at step four of the testimony, as well as the function report completed by Plaintiff. ECF No. 15:10-12 (citing TR. 651-52). Plaintiff then concludes that "[n]one of this [testimonial] evidence 'supports' the ALJ's unsupported findings." ECF No. 15:12.[4]

---

[3] Social Security Ruling 16-3p provides guidance for evaluating the intensity, persistence, and limiting effects of a claimant's symptoms. *See* SSR 16-3p, 2017 WL 5180304, at *1. The ruling "eliminat[es] the use of the term 'credibility' [and] clarif[ies] that subjective symptom evaluation is not an examination of a [claimant]'s character." *Id.* at *2. However, the Ruling did not alter the Tenth Circuit's guidance that a review of a claimant's claims of severe symptoms is the province of the finder of fact. *See Romo*, 2018 WL 4212112 at *4.

[4] Though Plaintiff claims that her argument is supported by the medical evidence of record, Plaintiff provides no record citations. *See* ECF No. 15:11, 12.

Though the testimonial evidence may not support the ALJ's findings, other evidence in the record does and the ALJ has met his burden in deciding to discount the testimony of Plaintiff and her husband. With regard to Plaintiff's husband, the ALJ provided the following explanation:

> The undersigned gives limited weight to Mr. Casey's statement, as it is a lay opinion based upon casual observation, rather than objective medical and testing. Mr. Casey's statement does not outweigh the accumulated medical evidence regarding the extent to which the claimant's limitations can reasonably be considered severe. Ultimately, his statement is unpersuasive for the same reasons that the claimant's own allegations do not fully persuade the undersigned, observing that they lack substantial support from objective findings in the record.

(TR. 651). In rejecting this third-party testimony, the ALJ considered the evidence in light of the medical evidence and other evidence of record. *See Barker v. Astrue*, 459 F. App'x 732, 740 (10th Cir. 2012) (noting that an ALJ should take into account medical evidence when considering third-party testimony). And because the ALJ based his rejection of the witness' testimony on his finding that it was not corroborated by the record, the ALJ's finding was supported by substantial evidence. *See Barker*, 459 F. App'x at 740. (finding that ALJ properly rejected third-party testimony that was unsupported by the medical evidence on record); *accord Wilkins-Beaver v. Comm'r of Soc. Sec. Admin.*, No. CIV-16-556-SM, 2017 WL 894433, at *5 (W.D. Okla. Mar. 6, 2017) (finding that ALJ's decision to reject third-party witness was supported by substantial evidence when ALJ set forth specific reasons for the decision, including that the testimony was not supported by medical evidence of record).

With respect to Plaintiff's testimony, the ALJ also cited to the lack of substantial support from objective findings in the record. (TR. 651). The ALJ further explained his decision to discount Plaintiff's statements as follows:

> After careful consideration of the evidence, the undersigned finds that the claimant's medically determinable impairments could reasonably be expected to cause the alleged symptoms; however, the claimant's statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely credible for the reasons explained in this decision. The claimant's protected filing date is the same day she contacted her doctor's office requesting a letter stating that she was disabled so she could refinance her home loan. The intensity of treatment is also inconsistent with the claimant's allegations. She received only medication to address her complaints of depression prior to her date last insured. Moreover, she admitted that she only took that medication sporadically. The claimant was also apparently able to care for her young grandchildren at home during the relevant period with little to no assistance, which can be quite demanding both physically and emotionally. Therefore, the undersigned accords only some weight to the claimant's testimony.

(TR. 652-53 (internal citations omitted)). *See* SSR 16-3p, 2017 WL 5180304, at *5, 7-8 (explaining that an ALJ must consider such factors as objective medical evidence, daily activities, treatment sought, and any other factors concerning functional limitations); 20 C.F.R. § 404.1529(c)(3) (same). The ALJ "clearly and affirmatively linked his adverse determination of Claimant's credibility to substantial record evidence . . . and our limited scope of review precludes us from reweighing the evidence or substituting our judgment for that of the agency." *Wall v. Astrue*, 561 F.3d 1048, 1070 (10th Cir. 2009) (internal citation, quotation marks, and brackets omitted). The Court finds no error in the ALJ's determination that Plaintiff's subjective claims regarding the severity of her symptoms were not supported by the evidence.

### b. Work History

Under the heading "The ALJ Next Condemns Ms. Casey's Work History," Plaintiff cites to the ALJ's statement that Plaintiff's work history shows that her work activity became sporadic as early as 2006, though her alleged disability onset date was 2009, "which raises a question as to whether [Plaintiff's] continuing unemployment is actually due to medical impairments." (ECF No. 15:12 (citing TR. 652)). Plaintiff complains that "[t]his is mere rank speculation on the ALJ's part" and calls the ALJ's assessment "ridiculous." (*Id.*). Plaintiff asserts that her work history is consistent with her symptomology, but does not actually point to evidence in the record supporting her claim.[5] The Court finds no error in the ALJ's consideration of Plaintiff's work history. *See Bean v. Chater*, 77 F.3d 1210, 1213 (10th Cir. 1995) (noting that claimant's prior work record can be considered in evaluating credibility and finding ALJ did not err in considering that claimant quit working prior to the alleged onset of disability); 20 C.F.R. § 404.1529(c)(3) (in evaluating symptoms, the ALJ "will consider all of the evidence presented, including information about your prior work record").

### c. Daily Activities

Though still under the caption about her work history, Plaintiff next argues the ALJ's statement that Plaintiff cared for her young grandchildren with minimal help "is pretty much a ridiculous statement too." (ECF No. 15:13 (citing TR. 653)). While Plaintiff points to Plaintiff's hearing testimony from June 7, 2011, to argue that Plaintiff required

---

[5] Plaintiff cites to TR. 29-39, which does not include information about her work history or symptoms prior to her alleged onset date of March 2009. *See* ECF No. 15:12-13 (citing TR. 29-39).

a great deal of help in caring for her grandchildren, the ALJ noted Plaintiff's hearing testimony on October 21, 2016, in which Plaintiff's testimony indicated that she did not require extraordinary amounts of help. *See* ECF No. 15:13 (citing TR. 29-39); TR. 652 (referencing TR. 681-84). Though the testimony may not reconcile completely, the ALJ is in the best position to resolve conflicts in the evidence and the Court finds no error in the ALJ's reliance on Plaintiff's ability to care for her grandchildren. *See Allman v. Colvin*, 813 F.3d 1326, 1333 (10th Cir. 2016); SSR 16-3p, 2017 WL 5180304, at *7 (explaining that an ALJ must consider such factors as daily activities in considering the severity of Plaintiff's alleged symptoms); 20 C.F.R. § 404.1529(c)(3)(i) (same).

### d. Treatment and Medication

In a portion of her brief that lacks a relevant caption, Plaintiff asserts that the ALJ erred in determining that the treatment Plaintiff received was inconsistent with her allegations of disabling symptoms. *See* ECF No. 15:13-15. Plaintiff points to the ALJ's statements that Plaintiff "received only medication to address her complaints of depression prior to her date last insured," and that Plaintiff "admitted that she only took that medication sporadically." (ECF No. 15:13 (citing TR. 652)). Plaintiff contends these statements indicate the ALJ improperly based his assessment of the severity of Plaintiff's impairments on conservative treatment that Plaintiff only used sporadically. Plaintiff cites *Grotendorst v. Astrue*, 370 F. App'x 879 (10th Cir. 2010) for the proposition that "lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations." (ECF No. 15:14-15). But the error requiring reversal in *Grotendorst* was the ALJ's failure to use the special technique to rate the

severity of the claimant's mental impairments at step two of the sequential evaluation. *Grotendorst*, 370 F. App'x at 882. Here, the ALJ identified Plaintiff's medically determinable mental impairments and used the special technique to determine their severity; thus, Plaintiff's reliance on *Grotendorst* is misplaced. *See* TR. 649-50; *Caldwell v. Comm'r of Soc. Sec. Admin.*, No. CIV-17-666-R, 2018 WL 2437191, at *3 (W.D. Okla. May 7, 2018) (R&R), adopted No. CIV-17-666-R, 2018 WL 2437059 (W.D. Okla. May 30, 2018) (distinguishing *Grotendorst* when plaintiff relied on it for the proposition that "lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations" in arguing that the ALJ improperly assessed the severity of plaintiff's symptoms).

And consideration of medication taken and treatment sought are factors the ALJ should consider in determining the severity of the impairments. *See Hargis v. Sullivan*, 945 F.2d 1482, 1489 (10th Cir. 1991) (affirming ALJ's consideration of claimant's sporadic use of medication); *Barnett v. Apfel*, 231 F.3d 687, 690 (10th Cir. 2000) (affirming ALJ's consideration of claimant's lack of treatment with respect to claimant's claims of disabling symptoms); 20 C.F.R. § 404.1529(c)(3)(iv-v) (listing medication and treatment as factors in determining severity of symptoms caused by impairment). The Court finds no error in the ALJ's consideration of the treatment Plaintiff received for her mental impairments. *See Caldwell*, No. CIV-17-666-R, 2018 WL 2437191, at *3.

### C. *Duty to recontact treating physicians*

As noted above, the administrative decision currently before the Court comes after a remand. The remand instructed the ALJ to further consider the medical opinions given

by treating sources Woody Jenkins, MD, and Jennifer Morris, MD. (TR. 629-30). Plaintiff notes that the ALJ stated that he found it "difficult to know how to interpret" the form completed by Dr. Jenkins, and characterized the form completed by Dr. Morris as "rather confusing." (ECF No. 15:20 (citing TR. 656, 657)). Plaintiff argues that, due to this confusion, "the ALJ was obligated to re-contact both Dr. Jenkins and Dr. Morris to get additional information." (ECF No. 15:21). In support of this argument, Plaintiff cites to the 2008 version of 20 C.F.R. § 404.1512(e)(1), which, when it was in effect, required an ALJ to recontact a treating source if additional evidence or clarification was needed due to a conflict or ambiguity. (*Id.* (citing 20 C.F.R. § 404.1512(e)(1) (2008)). However, this section was amended in 2012, almost five years before the administrative hearing at issue here, and thus not in effect at the relevant time. *See* 77 Fed. Reg. 10651-01, 2011 WL 7404303 (final rules, effective March 26, 2012); *see also Hahn v. Berryhill*, No. 17-CV-00663-NYW, 2018 WL 1046796, at *8 (D. Colo. Feb. 26, 2018) (recognizing amendment). The regulation governing the ALJ's decision here advises that "if the evidence in your case record is insufficient or inconsistent, we may need to take additional actions," including the option – but not requirement – of recontacting medical sources. 20 C.F.R. § 404.1520b. This new regulation provides the ALJ with greater flexibility and discretion in deciding whether to recontact a treating source than Plaintiff alleges.

Here, though the ALJ did state that the medical forms were confusing, he did not, as Plaintiff alleges, "openly admit[] the inadequacy of the evidence." *See* ECF No. 15:21. Instead, the ALJ thoroughly explained the confusion he found in each form, then went on to carefully apply the factors relevant to consideration of a treating physician opinion.

*See* TR. 654-58; *see also Watkins v. Barnhart*, 350 F.3d 1297, 1300-01 (10th Cir. 2003) (explaining the framework for considering opinions of treating physicians). The ALJ did not find that the evidence in the case was insufficient or inconsistent, nor has Plaintiff shown that he should have. As such, Plaintiff's assertion that the ALJ was required to recontact Dr. Jenkins and Dr. Morris is unavailing.

## ORDER

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on this review, the Court **AFFIRMS** the Commissioner's decision.

ENTERED on September 27, 2018.

_____
SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE